RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0102P (6th Cir.)
File Name: 03a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

KINGS LOCAL SCHOOL
DISTRICT, BOARD OF
EDUCATION,
      *Plaintiff-Appellee,*

      *v.*

ISAAC ZELAZNY and CINDY
ZELAZNY, individually and as
the parents and natural
guardians of Ariel Zelazny,
      *Defendants-Appellants.*

No. 01-3841

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00529—Sandra S. Beckwith, District Judge.

Argued: March 11, 2003

Decided and Filed: April 7, 2003

Before: MARTIN, Chief Circuit Judge; ROGERS, Circuit
Judge; EDMUNDS, District Judge.[*]

_____

[*] The Honorable Nancy G. Edmunds, United States District Judge for
the Eastern District of Michigan, sitting by designation.

———————————

## COUNSEL

**ARGUED:** Thomas W. Jacobs, LUTZ, CORNETT &
ALBRINCK, Cincinnati, Ohio, for Appellants. J. Michael
Fischer, ENNIS, ROBERTS & FISCHER, Cincinnati, Ohio,
for Appellee. **ON BRIEF:** Thomas W. Jacobs, Lisa Barbara
Avirov, LUTZ, CORNETT & ALBRINCK, Cincinnati, Ohio,
Gregory Adam Napolitano, LUTZ, BOSTER & CORNETET,
Cincinnati, Ohio, for Appellants. J. Michael Fischer, ENNIS,
ROBERTS & FISCHER, Cincinnati, Ohio, for Appellee.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Chief Circuit Judge. This
appeal arises from a decision of the district court finding that
Kings Local School District was inappropriately ordered to
pay for a private school for Ariel Zelazny, pursuant to
proceedings under the Individuals with Disabilities Education
Act, 20 U.S.C. §§ 1400, *et seq.* Ariel's parents, Cindy and
Isaac Zelazny, appeal the district court's finding that the
individualized educational program provided Ariel a free
appropriate public education as required by the Act.

At the time of the issues in question, Ariel was a ninth-
grader at Kings High School in Ohio. Ariel is a child with a
qualified disability under the definition of the Act, because he
has a potent combination of three disorders. He has obsessive
compulsive disorder, Tourette Syndrome, and Asperger's
Syndrome. Any one of these disorders would make life more
difficult for a child, but the coincidence of all three disorders
is very complex.

Ariel enrolled in Kings in the fall of 1996, and immediately
Kings conducted a multi-factored evaluation of him, in order
to fashion an individualized education program. An
individualized education program was devised for Ariel for

the seventh and then for the eighth grades. Ariel had successful years both years, by all accounts. He received passing grades in all his classes, and he began to make progress in his socialization skills.

In the early fall of 1998, Cindy Zelazny and teachers from the high school formulated Ariel's program. The individualized education program they developed for Ariel's freshman year of high school did not differ tremendously from that of his eighth grade year. Academically, and in terms of Ariel's behavior, performance, and progress, the programs were virtually the same.

Shortly after the program was finalized and adopted, the Zelaznys felt Ariel began having trouble at school. His parents reported that he was repeatedly victimized at school and became the object of teasing by several classmates. His behavior at home deteriorated, and the physical manifestations of his disorders increased. His parents were worried about him, and they contacted the high school to request an emergency individualized education program meeting. On November 12, 1998, the school district and Cindy Zelazny met to discuss Ariel's program. The school district agreed, at Cindy Zelazny's request, to hire a consultant to evaluate Ariel, his needs, and the program. Autism Consultation and Training was hired in January of 1999, and it submitted its report to the school and Ariel's parents in March.

Kings held three meetings following submission of the consultant's report. At the first two meetings, Ariel's parents were invited to attend, and the group discussed Ariel's education program and the results of the evaluation. The third meeting, Kings maintains, was designed as an in-service for teachers, conducted by the consultants, in order to educate the staff at Kings on the kinds of problems Ariel faced. The Zelaznys maintain this was another individualized education program meeting specifically about Ariel and that their exclusion from it violated their rights under the Individuals with Disabilities Education Act. The Zelaznys requested a

due process hearing under the Act to address this grievance. They asserted that Kings could not provide Ariel an appropriate education, under the meaning of the Act, and they asked that the school district pay for Ariel to attend the Pathway School, in Pennsylvania. They enrolled Ariel for the fall.

While at Kings, Ariel continued to receive good grades and to earn credit toward graduation, and Kings insists that he was making progress throughout the year. He was participating effectively in small group settings in both his resource room and mainstreamed classes. Ariel also had an after-school job in the school library where he performed his assigned duties with little supervision. He occasionally assisted other students in using the computers in the library.

Nevertheless, the impartial hearing officer, upon conducting the due process hearing in August and September of 1999, held that Kings violated both its procedural and substantive obligations to the Zelaznys under the Individuals with Disabilities Education Act. Ariel was deprived a free appropriate public education as required by statute. Kings requested state level review of the impartial hearing officer's decision. The first due process hearing produced about 1,500 pages of testimony and about seven hundred pages of exhibits. The state level review officer denied Kings the right to present more evidence, and on June 5, 2000, the state-level officer affirmed the impartial hearing officer's original decision. The district court overturned this decision.

The standard of review for cases under the Individuals with Disabilities Education Act is distinctive. As this court said in *Thomas v. Cincinnati Board of Education*, 918 F.2d 618, 624 (6th Cir. 1990), the seminal Supreme Court case, *Board of Education v. Rowley*, 458 U.S. 176 (1982), established that

> [w]hen reviewing cases brought under the Act, courts must determine whether the state has complied with the Act's procedural requirements, and whether the IEP [individualized education program] is reasonably calculated to enable the child to receive educational

benefits. While the focus of the inquiry is clear, the appropriate standard of review is more elusive.

We went on to say that cases under this Act require a *de novo* review of the due process hearing but that the findings of the state administrative proceedings should be given due weight. *Thomas*, 918 F.2d at 624. This standard of review is known as "modified *de novo*" review. *Cleveland Heights-University Heights City Sch. Dist. v. Boss*, 144 F.3d 391, 397 (6th Cir. 1998). As this court concluded in *Thomas*, "Although the procedural posture of this case requires us to review the district court's decision *de novo*, we do so cognizant of the fact that we may not substitute our notion of sound educational policy for that of the school authorities and are required, instead, to give due weight" to the decision of the state level review officer. *Thomas*, 918 F.2d at 624. As we said in a recent case, *McLaughlin v. Holt Public Schools Board of Education*, 320 F.3d 663, 669 (6th Cir. 2003),

> The amount of weight due to administrative findings depends on whether the finding is based on educational expertise. Less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation. More weight is due to an agency's determinations on matters for which educational expertise is relevant.

While this appears to be a complex standard, we have articulated how to implement it. We said, "[A] district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001). This court went on to say, we "appl[y] a clearly erroneous standard of review to the district court's findings of fact, and *a de novo* standard of review to its conclusions of law." *Id.*

The Supreme Court in *Rowley* said that in passing the Individuals with Disabilities Education Act, "Congress sought

primarily to make public education available to handicapped children. But in seeking to provide such access to public education, Congress did not impose upon the States any greater substantive educational standard than would be necessary to make such access meaningful." 458 U.S. at 192. The Court went on to say, "[T]he intent of the Act was more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." *Id.* For our purposes in this case, the Act's intent mandates answering two questions: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Id.* at 206-7; *see also McLaughlin*, 320 F.3d at 669. As the Supreme Court concluded in *Rowley*, "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." 458 U.S. at 207. Specifically, this means "[t]he statute may not require public schools to maximize the potential of disabled students commensurate with the opportunities provided to other children." *Renner v. Board of Educ. of Public Schools of City of Ann Arbor*, 185 F.3d 635, 644 (6th Cir. 1999).

The statute, at 20 U.S.C. § 1414(d)(1)(A), requires that an individualized education program include, among other things,

> (i) a statement of the child's present levels of educational performance . . . ; (ii) a statement of measurable annual goals, including benchmarks or short-term objectives . . . ; (iii) a statement of the special education and related services and supplementary aids and services to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child . . .; (iv) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in the activities described in clause (iii); . . . (viii) a statement of--(I) how the child's progress

toward the annual goals described in clause (ii) will be measured; and (II) how the child's parents will be regularly informed (by such means as periodic report cards), at least as often as parents are informed of their nondisabled children's progress . . . .

These "are requirements by which the adequacy of an IEP is to be judged, although minor technical violations may be excused." *Cleveland Heights*, 144 F.3d at 398. Further, "[t]his Court has determined that appellant and his parents bear the burden of proving by a preponderance of the evidence that the IEP devised by the Board is inappropriate." *Doe v. Board of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 458 (6th Cir.1994); *McLaughlin*, 320 F.3d at 669.

The Zelaznys claim that the individualized education program that Kings devised for Ariel was deficient in many respects. They say it provided no academic goals for Ariel and failed to provide benchmarks for determining Ariel's success. The Zelaznys also claim that the staff Kings provided for developing the program was ill-equipped to deal with the situation Ariel's three disorders presented.

As to the first two of these claims, the district court found that the team that formulated Ariel's individualized education program for the ninth grade, which included Cindy Zelazny, concluded that it was important for the program to focus on socialization and organizational goals rather than academic ones. As to the latter of these assertions, in *Renner*, this court found that the team developing the plaintiff child's education program was well-prepared to do so because that team "constituted a group which could make appropriate placement decisions, including an IEP, and included 'persons knowledgeable about the child, the meaning of the evaluation data, and the placement options.'" 185 F.3d at 644 (citing 34 C.F.R. § 300.533(a)(3)). In that case, we said that the program did not fail simply because the team did not consult with the parents' expert. *Id.* In a similar case, this court said, "We reject the contention that the District must include an expert in the particular teaching method preferred by the

parents in order to satisfy the requirement that the [committee developing the program] include persons knowledgeable about 'placement options.'" *Dong v. Board of Educ. of Rochester Community Sch.*, 197 F.3d 793, 801 (6th Cir. 1999).

In *Dong*, this court also found that the child's education program did provide a free appropriate public education, even where the program allegedly "failed to consider [the child's] 'unique needs' but, rather, only offered a 'standard' autistic impaired program based on what might be best for a 'typical' autistic child." *Id.* at 802. It must be noted, however, that Ariel's "unique needs" may be more complicated than other children's. A "standard" autistic program would only begin to cover Ariel's disorders and their manifestations, and the occurrence of all three disorders in one child appears uncommon enough that there may be no "standard" program at all for dealing with a child like Ariel.

Kings argues that Ariel's education program was providing him a free appropriate public education. The school district offers as proof the fact that Ariel achieved passing grades throughout ninth grade in his academic classes. The Supreme Court has found that advancement is strong evidence that a child is receiving a meaningful educational experience, although it has refused to hold "that every handicapped child who is advancing from grade to grade in a regular public school system is automatically receiving a 'free appropriate public education.'" *Rowley*, 458 U.S. at 203, n.25. Kings, however, asserts that Ariel was achieving success in school, and he was having no more discipline problems than he did in eighth grade. In fact, he had one in-school suspension in ninth grade, as compared to two in eighth.

In contrast, Ariel's parents did not feel the year was successful, and Cindy Zelazny noted that the family was having an increasingly difficult time with Ariel when he arrived home from school. We have said, however, in *Tennessee Department of Mental Health and Mental*

*Retardation v. Paul B.*, 88 F.3d 1466, 1471 (6th Cir. 1996) (citations omitted),

> To assess whether a residential placement is appropriate, a determination must be made whether full time residential placement is necessary for educational purposes as opposed to medical, social, or emotional problems that are separable from the learning process. . . . Under the Act, residential placement is "at no cost to the parents of the child" only if it is necessary for educational purposes.

The psychologist's notes from his meetings with Ariel and his mother in the fall of 1998 indicate that his mother felt Ariel's behavior at home was making her life "a living hell." She indicated, however, that she was satisfied with Ariel's school situation in December of 1998, shortly after having requested an emergency meeting of the education program committee and an independent consultant's evaluation of the program.

Ultimately, the question becomes whether or not Ariel's individualized education program was formulated in order for Ariel to receive some educational benefit. *See McLaughlin*, 320 F.3d at 669. The district court found, based on the evidence Kings presented, that Ariel received educational benefit from his year at Kings, under his individualized education program. As the district court further noted, the Zelaznys' experts showed how to maximize Ariel's achievement, in an ideal setting, but the Act does not command that Kings do so. *See Renner*, 185 F.3d at 644.

The Zelaznys next argue that Kings violated Ariel's rights under the Act when Kings failed to revise Ariel's education program. The Zelaznys claim the program was clearly insufficient, as evidenced by Cindy Zelazny's request in the fall for an emergency meeting regarding the program. She claims Ariel's behavior was deteriorating and she was concerned for his physical and emotional well-being at Kings High School. The Zelaznys offer the consultants' report on Ariel's program as further proof of its failings. The

consultants suggested myriad ways to improve Ariel's program.

The Individuals with Disabilities Education Act requires, at 20 U.S.C. § 1414(d)(4):

> (4) Review and revision of IEP: (A) In general: The local educational agency shall ensure that, . . . the IEP Team– (i) reviews the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved; and (ii) revises the IEP as appropriate to address– (I) any lack of expected progress toward the annual goals and in the general curriculum, where appropriate; (II) the results of any reevaluation conducted under this section; (III) information about the child provided to, or by, the parents . . . ; (IV) the child's anticipated needs; or (V) other matters.

This is the standard under which the failure to revise Ariel's individualized education program should be measured. *See also* 34 C.F.R. § 300.343. The federal courts have said little on the failure to revise programs, but the school district *is* required to revise the programs as appropriate. Kings did revise Ariel's program after the consultants' report. Although it did not implement every change recommended by the consultants, it immediately made minor changes and began planning and training for more significant changes in time for Ariel's new individualized education program the following fall.

The Zelaznys next claim that Kings failed to comply with the procedural requirements of the Act. The Zelaznys claim that they were improperly excluded from the third meeting about Ariel's education program. This court has said, "While we strictly review an IEP for procedural compliance, technical deviations do not render an IEP invalid." *Dong*, 197 F.3d at 800. The Act requires "an opportunity for the parents of a child with a disability . . . to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate

public education to such child. . . ." 20 U.S.C. § 1415(b)(1). This court has found that "[o]pportunity for participation by parents is . . . an important aspect." *Renner*, 185 F.3d at 642.

Nevertheless, parent participation in meetings is clarified by the implementing regulations: "A meeting does not include informal or unscheduled conversations involving public agency personnel and conversations on issues such as teaching methodology, lesson plans, or coordination of service provision if those issues are not addressed in the child's IEP." 34 C.F.R. § 300.501(b)(2). Kings claims that the third meeting was in-service work to train the teachers in accordance with the recommendations of the consultants' report, but the Zelaznys claim the meeting was to revise Ariel's individualized education plan.

A similar situation arose in *Burilovich v. Board of Education of Lincoln Consolidated Schools*, 208 F.3d 560 (6th Cir. 2000). In that case, this court found that the parents did not show they were prevented from participating in the development of their child's education program where they attended several meetings on the program, expressed their views clearly and vocally there, had participated in the original creation of the program, and remained in contact with the school district through letters and phone conversations. *Id.* at 568. The court concluded, "[P]laintiffs have cited no support for their implicit assertion that schools may never discuss a child's IEP, goals, objectives, or educational methodology out of the presence of the parents. For these reasons, plaintiffs have failed to demonstrate that they were denied participation in the [program development] process." *Id; see also N.L. ex rel. Mrs. C. v. Knox County Sch.*, 315 F.3d 688, 693 -94 (6th Cir. 2003). For these reasons, the district court properly found there was no procedural violation.

Even if Kings' failure to include the Zelaznys in the third meeting with the consultants was a violation of the Act's procedural requirements, the Zelaznys may not be entitled to relief. *See Knable*, 238 F.3d at 764. "Only if we find that a

procedural violation has resulted in such substantive harm, and thus constituted a denial of [the child's] right to a FAPE [free appropriate public education], may we 'grant such relief as the court determines is appropriate.'" *Id.* (citing the Act). We went on to say, "Substantive harm occurs when the procedural violations in question seriously infringe upon the parents' opportunity to participate in the IEP process." *Id.* at 765. We do not believe, from the record, that the Zelaznys were precluded from meaningful participation in the process. Mrs. Zelazny met with Ariel's teachers to discuss Ariel's program for the ninth grade. She spent a great deal of time talking with instructors about Ariel's needs. She met with Kings to discuss the program after its institution. At Mrs. Zelazny's request, Kings hired a consulting firm. The Zelaznys attended two of three meetings regarding the firm's recommendations. Like the family in *Burilovich*, Ariel's parents were integrally involved in each step of the development and implementation of Ariel's individualized education program.

Because we hold that the district court's findings on the facts of this case are not clearly erroneous and because Kings provided Ariel with a free and appropriate public education, we AFFIRM the decision of the district court.